FILED
2012 Apr-30  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **PREDETHIA WRIGHT NASH**, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. CV-11-KOB-2305-S** |
| | ) | |
| **MICHAEL J. ASTRUE**, | ) | |
| **Commissioner of the Social**, | ) | |
| **Security Administration** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

## I. INTRODUCTION

On June 11, 2007, the claimant, Predethia Wright Nash, applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. The claimant alleges disability commencing on April 13, 2007, because of constant, chronic pain. (R. 80). The Commissioner denied the claim. (R. 81). The claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ), and the ALJ held a hearing on May 8, 2009. (R. 87). In a decision dated June 2, 2009, the ALJ found that the claimant was not disabled as defined in the Social Security Act. (R. 16). The Appeals Council denied the claimant's request for review on April 28, 2011. (R. 1). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II. ISSUES PRESENTED

The issue presented is whether the ALJ properly applied the Eleventh Circuit's three-part pain standard.

## III. STANDARD OF REVIEW

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). "[The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ."

To make this determination the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[1]

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising form that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

## V. FACTS

The claimant was forty-one years old at the time of the administrative hearing and has an eleventh grade education. (R. 40). Her past work experience includes employment as a nurse's assistant, waitress, hospital cleaner/housekeeper, billing clerk, and file clerk. (R. 66). The

---

[1]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981)(Unit A).

claimant testified that she has not engaged in substantial gainful activity since April 13, 2007.

(R. 41). The claimant alleged that she is unable to work because she has constant, chronic pain in

her neck, lower back, hips, knees, legs, and feet. (R. 43-4). The claimant testified that her pain is

a result of a work-related injury that occurred on January 20, 2006. (R. 44, 239).

*Physical Limitations*

On January 20, 2006, the claimant, while working as a nurse's assistant, sustained an

injury when she tried to catch a falling patient. (R. 44). Five days after the incident, on January

25, 2006, Dr. Donald J. Reynolds, a specialist in diagnostic radiology, interpreted the claimant's

lumbar MRI and reported impressions of a mild bilateral neural foraminal stenosis at L4/5

secondary to diffuse annular bulge and hypertrophic facet arthritic changes. (R. 204).

Based on a diagnosis of lumbar radiculopathy, Dr. James P. Baretta, a treating physician

and pain management specialist, performed three epidural steroid injections on the claimant on

February 3, 2006, February 17, 2006, and March 3, 2006. (R. 285-7).

On April 3, 2006, Dr. Samuel Bowen, a neurosurgeon, reported that the claimant had a

lumbar strain and stated that the claimant "should be able to return for full duty activities

eventually." Dr. Bowen suggested physical therapy and released the claimant for light duty work.

(R. 239).

On June 29, 2006, Dr. J. Stanford Faulkner, a treating physician and orthopedic surgeon,

reported that x-rays of the claimant's lumbar spine showed no definite abnormalities and

recommended the claimant get a new MRI. (R. 232). On July 28, 2006, Dr. Faulkner reported

that the new MRI, performed on July 11, 2006 (R. 269), showed no abnormalities. (R. 233). Dr.

Faulkner concluded that surgery definitely would not help to alleviate the claimant's pain. *Id.*

On January 8, 2007, Dr. Michelle J. Turnley, a treating physician and physical medicine and rehabilitation specialist, examined the claimant and reported that the claimant "appears to be in some degree of discomfort." Dr. Trunley reported that the examination of the lumbar spine revealed no asymmetry and normal alignment. Dr. Turnley diagnosed the claimant with sciatic neuralgia and lumbar degenerative disc disease. Dr. Turnley recommended work conditioning and medication. She prescribed Lodine and Flexerill and decided to "proceed with conservative management." (R. 228-9). On January 31, 2007, Dr. Turnley reported that the claimant had "participated well" in work conditioning and was able to lift thirty pounds safely. Dr. Turnley reported that the claimant did have pain complaints; however, "no breakdown in her musculoskeletal" existed during her work conditioning. Upon examination, Dr. Turnley reported that the claimant had slight hypertonicity and was tender to palpatation in the lower lumbar area. Dr. Turnley reported that the claimant's sciatic neuralgia was mostly muscular. Dr. Turnley refilled the claimant's prescriptions of Lodine and Flexil, released the claimant to work at light/medium duty, and recommended a functional capacity evaluation of the claimant. (R. 226).

On April 2, 2007, Dr. Mark Richman of Adamsville Family Medicine, a treating physician and practitioner of internal medicine and family medicine, treated the claimant for complaints of migraine headaches and insomnia. Records from Adamsville Family Medicine on June 13, 2007 indicate that the claimant complained of knee pain and that her knees "sometimes give way;" the claimant was treated for chronic constipation on August 15, 2007 (R. 328-9); the claimant complained that Celebrex was not controlling her arthritis on September 21, 2007; and the claimant complained of nausea, vomiting, leg and back pain, and leg cramps on November 27, 2007. On December 28, 2007, the claimant returned to the office complaining of increased

lower back pain, and Dr. Richman referred the claimant to Dr. Sean O'Malley. (R. 323-6).

The report, dated January 17, 2008,  from Dr. Sean O'Malley, a neurosurgeon, concluded that the claimant had a small central disc protrusion that did not seem to compress the root on either side. He reported that the disc protrusion may be causing the claimant's pain; however, Dr. O'Malley concluded that surgery would not help because the protrusion was so small. Dr. O'Malley  suggested that the claimant was a candidate for pain management. (R. 321)

The claimant visited Adamsville Family Medicine several times  from February 2008 to May 2009, complaining of back and knee pain. (R. 315-19, 322). In February 2009, the claimant reported that the drug Neurontin helped the pain, but she was still hurting. (R. 316). On May 1, 2009, the claimant complained of swollen feet as well as pain in her knees and lower back. The doctor restarted the claimant on Celebrex and gave her a prescription for Percocet. (R. 314).

On September 18, 2007, Dr. David L. Gordon, consulting physician and specialist in internal medicine, reported his impressions of foraminal stenosis L4 and L5/annular bulge/hypertrohpic facets and chronic bilateral knee pain. Dr. Gordon examined x-rays of claimant's right knee and reported no compartment narrowing, no opsteophytes, and no varus or valgus deformity. Dr. Gordon reported that the claimant had no problems sitting, even though she did have a slight lurch and favored the right lower extremity. (R. 294).

*The ALJ Hearing*

After the Commissioner denied the claimant's request for disability insurance benefits, the claimant requested a hearing before an ALJ. (R. 87). On May 8, 2009, an ALJ conducted a hearing on behalf of the claimant. (R. 34-79). At the hearing, the claimant testified that she had chronic pain in her neck, lower back, hips, knees, and feet. (R. 44). The claimant testified that

she takes Percocet, Xanaflex, and Flexeril every day to help manage her pain. When her attorney questioned her, the claimant testified that she had multiple epidural injections and was also taking Neurontin, Prilosec, Atenolo, Gapnentin, and Amitica. (R. 49-52).

The ALJ asked the claimant why she could not do light duty or sedentary-type work, and the claimant replied that her medication makes her dizzy and light headed. (R. 45-6). The claimant further testified that the pain wakes her up at night and that even when she sits down, her back bothers her, her feet swell, and she has tingling in her legs. When her attorney questioned her about doing sedentary jobs, the claimant testified that she has trouble concentrating, especially when she takes her pain medications. (R. 55-6).

The claimant testified that when she sits for a long period of time, she has pain "pressing down on [her] back . . . like a knife." The claimant also testified that sometimes when she walks her legs give out, and she falls down. (R. 58). The claimant testified she is also in pain while driving. (R. 61).

When her attorney asked her whether she had pain, numbness, burning, and tingling going down her legs and lower back, the claimant answered in the affirmative. (R. 58). The claimant indicated that moving around and lying down helps alleviate the pain. (R. 59). When her attorney asked her whether she could walk without being in pain, the claimant responded that she is constantly in pain and could not walk to the bathroom without hurting. (R. 60).

The claimant testified that on a scale from one to ten, with ten being the worst, her pain is an eight on a daily basis. The claimant testified that with her medications, the pain is reduced to a seven. (R. 62).

Later in the hearing, the claimant testified that she has sharp pains in her right arm and

hands. The claimant attributes this pain to arthritis. (R. 69-70). The claimant indicated that the pain would affect her ability to handle and grip objects. (R. 71).

A vocational expert, Ms. Schulman, testified concerning the type and availability of jobs that the claimant was able to perform. (R. 63-77). Ms. Schulman testified that the claimant would not be able to perform any of her past work with her limitations, but that jobs exist in the economy that such a person could perform. Ms. Schulman testified that these jobs included assemblers and hand packers. (R. 67). The ALJ asked Ms. Schulman to identify any jobs that were sedentary and required only occasional pushing and pulling with a leg, occasional postural movements, but required no ladders and avoided cold, heat, wetness, humidity, vibration, and hazards. Ms. Schulman identified assemblers and inspectors/checkers. (R. 68).

The ALJ then asked whether a person, like the claimant, could sustain employment in the economy if this person had to be absent from work frequently or needed to go home early because of pain. Ms. Schulman replied in the negative. (R. 69).

The claimant's attorney asked Ms. Schulman whether the claimant could perform any of the aforementioned jobs if the claimant were unable to use her right hand effectively. (R. 71). Ms. Schulman replied that if the claimant were only able to use her arm occasionally throughout the day, then that limitation would preclude the assembler and hand packing jobs, reduce the inspector/checker jobs by fifty percent, and include packing machine vendor jobs. (R. 72-4). The claimant's attorney then questioned Ms. Schulman about other jobs that a person could perform with the limitations of light work, occasional pushing and pulling, occasional postural movements, and avoiding cold, heat, wetness, humidity, vibration, and hazards. Ms. Schulman testified that greeter/hostess jobs would be available along with machine tending or packing

8

positions. (R. 74).

The claimant's attorney then asked Ms. Schulman whether the claimant could do any of

the greeter/hostess or machine tending/packing jobs if the claimant had difficulty concentrating

on tasks. Ms. Schulman reiterated the fact that if the claimant could not "sustain in the pace and

persistence of full-time employment" then all jobs would be precluded. (R. 75). The ALJ then

clarified that the employer would not allow the claimant to lie down during the day while on the

job. (R. 76).

The ALJ concluded his examination of Ms. Schulman by asking how a sit-stand option

would affect greeter/hostess jobs. Ms. Schulman replied that a sit-stand option would reduce the

number of greeter/hostess jobs by twenty-five percent, but that certain jobs exist, specifically at

Walmart, where the employee is allowed to sit on some occasions. (R. 77).

*The ALJ's Decision*

On June 2, 2009, the ALJ issued a decision finding the claimant was not disabled under

the Social Security Act. (R. 16). First, the ALJ found that the claimant met the insured status

requirements of the Social Security Act through December 31, 2010. Second, the ALJ found that

the claimant had not engaged in substantial gainful activity since the alleged onset of her

disability. Third, the ALJ found that the claimant's obesity, degenerative joint

disease/osteoarthritis of the knees, and degenerative joint disease of the lumbar and cervical

spine qualified as severe impairments; he concluded, however, that these impairments did not

singly or in combination meet or medically equal one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1. (R 19-20).

Fourth, the ALJ considered the claimant's residual functional capacity to perform

unskilled work at the light exertional range. The ALJ followed a two-step process in considering the claimant's symptoms. (R. 20). First, he determined that an underlying medically determinable physical or mental impairment existed that could reasonably be expected to produce the claimant's pain; however, in the second step of the process, the ALJ evaluated the intensity, persistence, and limiting effects of the claimant's symptoms and determined that, while the claimant can no longer perform her past relevant work, she is capable of performing some type of work. (R. 21-2).

To support his conclusion, the ALJ referred to treating sources who released the claimant to light or medium duty work. Additionally, the ALJ noted that the claimant continued to work after the work-related injury and as she participated in conservative treatment for her pain. The ALJ commented that he "[gave] great weight to the opinions that [the claimant] can return to light type exertional work by her treating sources." The ALJ also referenced the state medical consultant's conclusions as to the physical exertion abilities of the claimant, which included the claimant's ability to lift ten pounds frequently and sit up, stand, or walk for up to six hours during an eight hour work day. (R. 23).

Additionally, the ALJ found the claimant "not entirely credible" as to her assertion that she is incapable of performing any type of work. The ALJ based this determination on the claimant's "demeanor during the hearing in that she was not credible in describing her limitations." The ALJ also noted that the claimant's attorney used "very leading questions" to encourage the claimant to describe additional limitations that the claimant had not included in her answers to the ALJ's initial questions. (R. 22).

Finally, the ALJ determined, considering the claimant's age, education, work experience,

and residual functional capacity, that jobs exist in significant numbers in the national economy that the claimant can perform. (R. 24). The ALJ concluded that the claimant is capable of performing a reduced range of simple, routine light work that requires only occasional pushing and pulling with her legs and occasional postural movements and that she should avoid constant exposure to cold, heat, wetness, humidity, vibration, and hazards. (R. 21). Based on these findings and testimony from the vocational expert, the ALJ concluded that the claimant retains the capacity for work that exists in significant numbers in the national economy and, therefore, is not disabled under the Social Security Act. (R. 25).

## VI. DISCUSSION

The claimant argues that the ALJ improperly applied the Eleventh Circuit's three-part pain standard. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The three-part pain standard applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt v. Sullivan*, 921 F.2d 1219, 1223 (11th Cir. 1991). "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id*. (emphasis added). A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

In applying the three-part standard, the regulations require the ALJ to consider the

claimant's statements regarding the intensity, persistence, and limiting effects of the claimant's symptoms in relation to objective medical evidence and other evidence to reach a conclusion about whether the claimant is disabled. 20 C.F.R. § 404.1529(c)(4). Additionally, the ALJ may include claimant's "appearance and demeanor during the hearing" as evidence of claimant's credibility; however, the ALJ must not reject objective medical evidence solely upon the ALJ's observation during the hearing. *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985). If the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id*.

In this case, the claimant argues that her allegation of pain is supported by objective medical evidence. The claimant notes the diagnosis, reported by both Dr. Reynolds and Dr. Gordon, of bilateral neural foraminal stenosis at L4-5 secondary to diffuse annular bulge and hypertrophic facet arthritic changes. In addition, the claimant notes the failed treatment of the three epidural blocks administered to the claimant between February and March 2006. The claimant also notes Dr. Gordon's report of abnormal findings in the claimant's spine and an abnormal range of motion in the claimant's knees. The claimant argues that the objective medical evidence proves that her medical condition is of such a severity that it can reasonably be expected to cause the alleged pain.

The ALJ conceded the claimant suffers from an underlying medical condition capable of generating pain; however, he found that the entirety of the medical evidence failed to support the claimant's allegations regarding the severity, persistence, and limiting effects of her pain. The

ALJ explicitly articulated his reasons for discrediting the claimant's allegations regarding the severity, persistence, and limiting effects of her pain. First, the ALJ referred to several treating sources that released the claimant to return to light or medium duty work. Even though the claimant states that the epidural injections failed to alleviate her pain, Dr. Bowen still released claimant for light duty work in April 2006, only one month after her last epidural injection. Additionally, Dr. Turnley released claimant for light-medium duty work two times in January 2007. The ALJ also considered the fact that the claimant continued to work until April 2007 after her work-related injury in January 2006.

Next, the ALJ considered the conclusions of the state medical consultant. The state medical consultant reported that the claimant could, among other things, stand/walk or sit up to a total of about six hours for each during an eight hour work day and carry twenty pounds on occasion and ten pounds frequently. The findings of the state medical consultant are consistent with the findings of one of the claimant's treating physicians, Dr. Turnley, who reported during work conditioning in January 2007, the claimant could lift thirty pounds safely. Therefore, the objective medical evidence does not support the claimant's allegations regarding the severity, persistence, and limiting effects of her pain.

Finally, the ALJ based his decision on the claimant's demeanor at the hearing. The ALJ noted that the claimant was not credible in describing her limitations at the hearing. Additionally, the ALJ noted that the claimant's attorney used leading questions to get the claimant to describe additional limitations that she failed to describe during the ALJ's initial questioning. The ALJ found that the claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms were credible only to the extent that she was in some pain;

13

however the statements were "less than credible" to the severity and persistence of the pain.

Therefore, while the claimant was credible to the extent that she is no longer able to perform the

functions of her past relevant work, the statements were "not entirely credible as to the assertion

that she is incapable of performing any type of work."  (R. 22).

Based on the explicit findings of the ALJ, this court concludes that he properly applied

the Eleventh Circuit's three-part pain standard and that substantial evidence supports his

decision.  Therefore, this court affirms the decision of the Commissioner.

## VII. CONCLUSION

For the reasons as stated, this court concludes that the decision of the Commissioner is

supported by substantial evidence and is to be AFFIRMED.

A separate order will be entered in accordance with this Memorandum Opinion.

DONE and ORDERED this 30th day of April, 2012.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE